UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALERIE SMITH,

       Plaintiff,                                    Hon. Wendell A. Miles

v.                                                    Case No. 1:04-CV-651

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 47 years of age at the time of the ALJ's decision. (Tr. 17). She earned a General Educational Development (GED) diploma and worked previously as a sales clerk, customer service representative, and assembler. (Tr. 61, 66, 93-99).

Plaintiff applied for benefits on March 1, 2001, alleging that she had been disabled since September 1, 2000, due to osteoporosis, degenerative disease of the hip and lower back, blood clots in her right lower extremity, and restless leg syndrome. (Tr. 50-52, 60, 293-95). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 27-49, 297-313). On January 4, 2004, Plaintiff appeared before ALJ B. Lloyd Blair, with testimony being offered by Plaintiff and vocational expert, Michelle Ross. (Tr. 525-59). In a written decision dated February 26, 2004, the ALJ determined that Plaintiff was not disabled. (Tr. 17-24). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 9-12). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **MEDICAL HISTORY**

On March 22, 2000, Plaintiff participated in a bone densitometry examination, the results of which revealed that she suffered from osteoporosis. (Tr. 178). The examining doctor recommended that Plaintiff begin taking calcium supplements. *Id.*

In response to complaints of pain and cramping in her lower extremities, Plaintiff participated in a duplex arterial doppler examination of her lower extremities on August 22, 2000. (Tr. 170). The results of this examination were "unremarkable." *Id.*

On December 30, 2000, Plaintiff participated in an MRI examination of her lumbar spine, the results of which revealed only "mild" facet degeneration at L5-S1 with no evidence of stenosis or disc herniation. (Tr. 168).

On January 23, 2001, Plaintiff was examined by Dr. Robert Kale. (Tr. 188-89). Plaintiff reported that she was experiencing an "aching sensation" in her lower back, as well as an "uncomfortable" feeling in her legs. (Tr. 188). She also reported that she was "frequently tearful" and had experienced a decrease in appetite, energy level, and motivation. *Id.* The results of a physical examination were unremarkable. (Tr. 189). Range of motion revealed no tenderness or abnormalities. An examination of Plaintiff's extremities revealed no evidence of clubbing, cyanosis, or edema. Motor, sensory, and neurological testing revealed no evidence of abnormality. Plaintiff was diagnosed with chronic pain syndrome, low back pain, right leg radiculitis, degenerative disc disease, restless leg syndrome, osteoporosis, and depression. *Id.* The doctor treated Plaintiff with various medications, including Neurontin, OxyContin, and Paxil. (Tr. 186-87, 189). On February 27, 2001, Plaintiff reported that her medication "only partially controlled" her low back pain. (Tr. 239).

On May 4, 2001, Plaintiff was examined by Dr. Karen Briggs. (Tr. 371-75). Plaintiff reported that she was "very depressed." (Tr. 371). She reported that she was also experiencing anxiety and stress due to her various physical problems. *Id.* Plaintiff was diagnosed with major depression (recurrent and severe), panic disorder, and obsessive compulsive disorder. (Tr. 375). Her then present GAF score was rated as 45 and her highest GAF score within the past year was rated as 50.[1] *Id.* Plaintiff began counseling with Dr. Briggs.

On June 21, 2001, Plaintiff participated in a consultive examination conducted by Dr. Bruce Davis. (Tr. 191-93). Plaintiff exhibited pain and reduced range of motion in her back, but "full motion and good strength" in her neck. (Tr. 192). An examination of Plaintiff's extremities was unremarkable, but she exhibited "unsteady" gait maneuvers due to back pain. The doctor observed no evidence of nerve, sensory, motor, or reflex abnormality. *Id.*

Dr. Davis diagnosed Plaintiff with osteoporosis, degenerative arthritis, restless leg syndrome, anxiety, and depression. (Tr. 193). The doctor also noted that Plaintiff was underweight. Dr. Davis concluded that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently. The doctor also reported that Plaintiff could stand/walk less than six hours daily and sit for eight hours daily, but could perform only limited bending and squatting activities. *Id.*

On June 28, 2001, Plaintiff participated in a consultive examination conducted by Robert Lane, Ed.D. (Tr. 194-96). Plaintiff exhibited a "normal" gait and sat without difficulty. (Tr. 195). Plaintiff reported that she spends most of the day laying on the sofa watching television. She

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). Scores of 45 and 50 both indicate that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

also reported, however, that she prepares meals, washes dishes, washes laundry, and cares for her personal needs without difficulty. *Id.* Plaintiff appeared lethargic, but the results of a mental status examination were otherwise unremarkable. (Tr. 195-96). The doctor diagnosed Plaintiff with major depressive disorder and an adjustment disorder with depressed mood. (T4r. 196). The doctor concluded that Plaintiff was able to understand simple instructions and make simple work-related decisions, but can only perform simple activities which require little effort and do not require that she interact with co-workers or the general public. *Id.*

On July 16, 2001, a physician completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 209-22). Determining that Plaintiff suffered from a disturbance of mood, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 210-18). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular impairment. (Tr. 219). Specifically, the doctor concluded that Plaintiff suffered mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced repeated episodes of decompensation. *Id.*

The doctor also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 205-06). Plaintiff's abilities were characterized as "moderately limited" in four categories. With respect to the remaining 16 categories, however, the doctor reported that Plaintiff was "not significantly limited." *Id.*

On October 17, 2001, Dr. Jei Martin completed a report regarding Plaintiff's physical capabilities. (Tr. 228). The doctor reported that during an 8-hour workday, Plaintiff could occasionally lift five pounds, stand/walk for 2 hours, and sit for two hours. The doctor reported that Plaintiff can only occasionally bend or reach and experiences limited range of movement in her lumbar and cervical spine. The doctor reported that Plaintiff experienced no limitations in her ability to use her extremities. *Id.*

Plaintiff participated in physical therapy from October 17, 2001, through November 2, 2001. (Tr. 243-48). Plaintiff reported that her therapy had decreased her pain and increased her strength. *Id.*

On December 12, 2001, Plaintiff was examined by Dr. Winston Griner. (Tr. 337). Plaintiff reported that she was experiencing pain in her lower back, hip, and neck. Plaintiff exhibited spasms and tenderness in her cervical spine, as well as paresthesias in her right leg. Fabere's sign[2] and straight leg raising were both positive. The doctor administered to Plaintiff a series of six trigger point injections. Dr. Griner concluded that Plaintiff "is disabled and unable to function because of her health conditions." *Id.*

Plaintiff participated in physical therapy from March 7, 2002, through May 6, 2002. (Tr. 262-82). During this time Plaintiff consistently reported that she was experiencing pain which rated as 9-10 (on a scale of 1-10). Plaintiff reported that this course of therapy failed to improve her condition. *Id.*

---

[2] Patrick's test is used to determine whether a patient suffers from arthritis of the hip joint. This test is also referred to as Fabere's sign. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* P-81 (Matthew Bender) (1996).

7

On September 11, 2002, Plaintiff reported to the Munson Medical Center complaining of chronic low back pain and requesting narcotic pain medication. (Tr. 463). An examination of Plaintiff's back revealed diffuse tenderness. Plaintiff was, however, able to "ambulate well" and the doctor observed no evidence of neurological, sensory, or motor deficit. Plaintiff was given narcotic pain medication. *Id.* Plaintiff returned to the clinic eight days later requesting additional narcotic pain medication. (Tr. 467).

On October 13, 2002, Plaintiff reported to the Munson Medical Center stating that she "desperately" wants more narcotic pain medication. (Tr. 472). Plaintiff reported no new complaints regarding her back pain and the doctor (having twice examined Plaintiff previously) declined to examine Plaintiff. The doctor instructed Plaintiff that "no more medications will be called in for her and that she should get all control medications from [her] family physician once she is seen by them rather than coming back here for more." Plaintiff stated that she understood, but nonetheless requested more narcotic pain medication. Contrary to his previous statements, the doctor then provided Plaintiff with ten pain tablets. After Plaintiff countered that she wanted 30 tablets, the doctor provided Plaintiff with an additional ten tablets. *Id.*

On January 27, 2003, Plaintiff completed a questionnaire concerning her activities. (Tr. 126-31). She reported that due to pain and depression she is "in bed most of the time." (Tr. 126). Plaintiff reported that she cooks, cleans, and performs other household activities, but experiences difficulty doing so. (Tr. 126-29). She also reported that she reads, watches television, listens to music, and crochets. *Id.*

On February 17, 2003, Plaintiff reported to the Munson Medical Center "after leaving Dr. Wilcox's office, frustrated that she did not receive any pain medications." (Tr. 484). Plaintiff

reported that she was experiencing pain in her mid and lower back, as well as her right hip. Plaintiff was "very tearful" throughout the examination and exhibited "a lot of facial grimaces with lying back." Straight leg raising was positive on the right and Plaintiff walked with an antalgic gait. She demonstrated "good" range of motion in her right hip and "normal" strength and deep tendon reflexes in her lower extremities. Plaintiff was diagnosed with chronic low back pain and given narcotic pain medication. *Id.*

X-rays of Plaintiff's right hip, taken on March 16, 2003, were "negative" with no evidence of bony or articular abnormalities. (Tr. 490).

On April 2, 2003, Plaintiff participated in a consultive examination conducted by Edward Tava, Ed.D. (Tr. 283-87). Plaintiff exhibited a "sluggish" gait and "uncomfortable" posture. (Tr. 284). Plaintiff reported that she "has no interests at all" and was "physically unable to do anything." *Id.* She appeared anxious and depressed. (Tr. 285). The doctor also noted that Plaintiff was "a very negative individual who tends to blame other people for many of her personal problems." *Id.* Plaintiff was diagnosed with (1) major depression, recurrent, moderate, (2) anxiety disorder, and (3) borderline intellectual functioning. (Tr. 286). Plaintiff's GAF score was rated as 48. (Tr. 287).

On April 23, 2003, Plaintiff was examined by Dr. Mark Barber. (Tr. 348-49). Plaintiff reported that she was experiencing severe pain in her hip, neck, and low back, for which she requested narcotic pain medication. (Tr. 348). When asked to heel/toe walk Plaintiff refused, stating that she was unable to do so because of pain. When Plaintiff was asked "to lay on her back for the straight leg raising test, she directly flopped back without hesitation and then reported [an]

9

inability to raise her leg due to severe pain." *Id.* The doctor refused Plaintiff's request for narcotic pain medication finding "nothing on examination to substantiate" her allegations of pain. (Tr. 349).

On September 9, 2003, Plaintiff was examined by Dr. Ami Shah. (Tr. 427). Plaintiff reported that she was experiencing pain in her neck and back. An examination of Plaintiff's neck revealed "mild" tenderness. An examination of her back revealed "mild" tenderness in the lumbosacral area with radiculopathy "elicited to the right." Plaintiff was given a 60 tablet supply of pain medication. *Id.* On September 26, 2003, Plaintiff requested that Dr. Shah provide her with a refill of her pain medications. (Tr. 432). Plaintiff asserted that her medication was "stolen during a baby shower." *Id.*

On October 9, 2003, Dr. Shah completed a report regarding Plaintiff's ability to perform work activities. (Tr. 353). The doctor reported that Plaintiff can occasionally lift five pounds. She further reported that during an 8-hour workday Plaintiff can stand, walk, and sit for no more than one hour each. *Id.*

On October 9, 2003, Plaintiff was examined by Dr. Charles Guernsey. (Tr. 416-18). Plaintiff reported that she was experiencing "generalized body pain" which was increased by any physical activity. (Tr. 416). Plaintiff moved slowly and exhibited 14 of 18 fibromyalgia tender points. (Tr. 417). She demonstrated diminished range of motion in her hips and shoulders and diminished strength in all her extremities. Straight leg raising produced "some radiation of pain" into her lower extremities. *Id.* Dr. Guernsey concluded that Plaintiff suffered from cervical and lumbar radiculitis, degenerative disc disease of the cervical and lumbar spine, and fibromyalgia. (Tr. 417-18). Plaintiff requested that she be prescribed narcotic pain medication, but the doctor indicated that he needed to first review her medical records before prescribing such medication. (Tr. 418).

On October 23, 2003, Plaintiff returned to Dr. Guernsey. (Tr. 420). Plaintiff again requested narcotic pain medication to treat her neck and lower back pain. The doctor declined Plaintiff's request for narcotics, however, noting a report from one of Plaintiff's mental health counselors that Plaintiff may have been abusing narcotics, alcohol, and other drugs. When Dr. Guernsey told Plaintiff that he would prescribe narcotics only if she participated in counseling, Plaintiff "became angry." *Id.*

Later that same day, Plaintiff visited Dr. Shah seeking narcotics. (Tr. 441). Plaintiff was "crying excessively," but "after she started talking she calmed down and did not cry after that especially when she was talking about her pain medications." Plaintiff was able to get on and off the examination table without difficulty, her gait was "perfectly normal," and she was able to "bend down and pick up her coat w/o any problems." *Id.*

On January 13, 2004, Dr. Barber completed a report regarding Plaintiff's ability to perform work related activities. (Tr. 455-59). The doctor reported that Plaintiff can walk two blocks, sit for 30 minutes, and stand for five minutes. (Tr. 456). Dr. Barber reported that during an 8-hour workday Plaintiff can sit for less than two hours and stand/walk for less than two hours. The doctor reported that Plaintiff requires a sit-stand option, can rarely lift/carry five pounds, and can never bend or crouch. (Tr. 456, 458).

At the administrative hearing Plaintiff testified that her back pain rated a 10 on a scale of 1-10. (Tr. 537). She testified that she can lift five pounds, stand for five minutes, and walk one block. (Tr. 539). Plaintiff testified that on a typical day she "doesn't do a whole lot" and often spends the day in bed watching television. (Tr. 540-41).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) status-post pelvic fracture, (2) degenerative disc disease of the lumbosacral spine, (3) spondyloarthritis of the cervical spine, (4) osteoporosis, and (5) recurrent major depression. (Tr. 20). The ALJ further determined that these impairments, whether considered alone or in combination,

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

fail to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[4] subject to the following limitations: (1) she can stand/walk for only two hours daily, (2) she can perform only simple, unskilled, and low stress work, (3) she cannot perform work requiring production quotas, (4) she cannot perform work requiring more than brief or superficial contact with the public, (5) she cannot perform work requiring reading, computing, calculating, problem solving, or reasoning, and (6) she requires work that permits her to be tardy or absent once per month. *Id.* Based on this RFC, as well as the testimony of a vocational expert, the ALJ determined that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 20-22). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1.     The ALJ Failed to Properly Evaluate the Opinion of Plaintiff's Treating Physician

Plaintiff began treating with Dr. Mark Barber on April 23, 2003, and treated with him through at least January 2004. (Tr. 338-49, 455-59). On January 13, 2004, Dr. Barber completed a report regarding Plaintiff's ability to perform work related activities. (Tr. 455-59). The doctor reported that during an 8-hour workday Plaintiff can sit for less than two hours and stand/walk for

---

[4] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983).

less than two hours. (Tr. 456). The doctor also reported that Plaintiff requires a sit-stand option, can rarely lift/carry five pounds, and can never bend or crouch. (Tr. 456, 458).

Plaintiff began treating with Dr. Ami Shah on September 18, 2003, and treated with her through at least October 23, 2003. (Tr. 351-53, 408-44). On October 9, 2003, Dr. Shah completed a report regarding Plaintiff's ability to perform work activities. (Tr. 353). The doctor reported that Plaintiff can occasionally lift five pounds. She further reported that during an 8-hour workday Plaintiff can stand, walk, and sit for no more than one hour each. *Id.*

The opinions expressed by these two doctors are inconsistent with the ALJ's conclusion that Plaintiff retains the ability to perform a limited range of light work. (Tr. 20). The vocational expert testified that the limitations identified by Dr. Barber and Dr. Shah were inconsistent with the ALJ's RFC determination and, furthermore, precluded the performance of any work activity. (Tr. 553-56). While the ALJ clearly rejected the opinions expressed by these care providers, he failed to articulate *any* rationale for doing so.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Nonetheless, the ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991

WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

As the Sixth Circuit recently made clear, however, when an ALJ chooses to accord less than controlling weight to the opinion of a treating physician, he must adequately articulate his rationale for doing so. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-47 (6th Cir. 2004). As the *Wilson* court held:

> If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors - namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion.
>
> Importantly for this case, the regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Id.* at 544 (internal citations omitted).

As the *Wilson* court further held, failure to comply with this requirement is not subject to harmless error analysis. *Id.* at 546-47. As the court expressly stated:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.

> . .To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory.

*Id.* at 546 (internal citations omitted).

As previously noted, the ALJ failed to articulate any rationale for his decision to accord less than controlling weight to the opinions expressed by treating physicians Dr. Barber and Dr. Shah. Given that such opinions are inconsistent with the ALJ's RFC determination, the ALJ's failure is not insignificant. The ALJ's failure in this regard clearly violates the principle articulated in *Wilson*.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and immediately award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, there does not exist compelling evidence that Plaintiff is disabled. The Commissioner's decision must, therefore, be reversed and this matter remanded for further factual findings, including but not necessarily limited to, the proper consideration of the opinions expressed by Dr. Barber and Dr. Shah.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision does not conform to the proper legal standards and is not supported by substantial evidence. The Court

16

further concludes, however, that there does not exist compelling evidence that Plaintiff is disabled. Accordingly, the Court recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date: January 31, 2006                               /s/ Ellen S. Carmody
                                                     ELLEN S. CARMODY
                                                     United States Magistrate Judge